UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN PENNY-BATEN,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 18-cv-05701-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 20-21 |

In February 2015, Plaintiff Ann Penny-Batten filed both a Title II application for disability insurance benefits and a Title XVI application for supplemental security income ("SSI"). *See* AR 527-28, 529-37 (applications). Her applications were initially denied in August 2015, *see* AR 484-87 (notice), and then, upon reconsideration, in January 2016. *See* AR 489-93 (notice). Ms. Penny-Batten subsequently requested a hearing before an administrative law judge ("ALJ"). *See* AR 499-500 (request). A hearing was held before ALJ David LaBarre in June 2017. *See* AR 365-435 (ALJ hearing transcript). On November 15, 2017, ALJ LaBarre issued his decision, concluding that Ms. Penny-Batten was not disabled from November 19, 2003, through the date of his decision.[1] *See* AR 38 (ALJ decision). Ms. Penny-Batten asked that the Appeals Council for the Social Security Administration review the ALJ's decision. *See* AR 524-26 (request). On July

---

[1] In her initial applications, Ms. Penny-Batten claimed that her disability onset date was November 19, 20013. However, at the hearing before the ALJ, Ms. Penny-Batten indicated that she was amending the alleged onset date to January 11, 2008. *See* AR 372 (ALJ hearing transcript); *see also* Mot. at 1 (noting amended onset date). In spite of this, ALJ LaBarre still addressed the onset date as originally claimed.

20, 2018, the Appeals Council held that there was no basis to change the ALJ's decision – even taking into account new evidence submitted by Ms. Penny-Batten – and therefore denied the request for review. *See* AR 1-2 (notice) (stating, *inter alia*, that the new evidence "does not show a reasonable probability that it would change the outcome of the decision"). Ms. Penny-Batten then initiated the instant action.

Ms. Penny-Batten has exhausted her administrative remedies with respect to her claims for disability insurance benefits and SSI. This Court has jurisdiction to review pursuant to 42 U.S.C. § 405(g). Ms. Penny-Batten has moved for summary judgment, seeking a reversal of the ALJ and Appeals Council's decisions. The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, including but not limited to the administrative record, and good cause appearing therefor, the Court hereby **GRANTS** in part and **DENIES** in part Ms. Penny-Batten's motion for summary judgment and **GRANTS** in part and **DENIES** in part the Commissioner's cross-motion.

## I.     FACTUAL & PROCEDURAL BACKGROUND

When Ms. Penny-Batten initially applied for disability insurance benefits and SSI in 2015, she primarily claimed that she suffered from back pain. *See, e.g.*, AR 484 (notice). However, by the time of the hearing before the ALJ in 2017, Ms. Penny-Batten put at issue not only her back pain but also her vertigo/dizziness, which she stated was a result of kidney problems related to her diabetes. *See* AR 404-05 (AL hearing transcript).

ALJ LaBarre rejected Ms. Penny-Batten's claims for disability insurance benefits and SSI, applying the five-step sequential evaluation process provided for by the relevant regulations.

> "Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the

|   |   |
|---|---|
| 1 | claimant to the government. Claimants not disqualified by step five are eligible for benefits." |
| 2 | *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). |

In the instant case, ALJ LaBarre made the following rulings regarding the five steps.

At step one, the ALJ found that Ms. Penny-Batten had not engaged in substantial gainful activity since November 19, 2003 (the original alleged onset date). *See* AR 39 (ALJ decision).

At step two, the ALJ determined that Ms. Penny-Batten suffered from only one severe impairment, *i.e.*, low back myalgia. *See* AR 41. The ALJ acknowledged that Ms. Penny-Batten suffered from other impairments as well – including diabetes and vertigo/dizziness – but found that they were not severe. *See* AR 41. The ALJ noted, *inter alia*, that Ms. Penny-Batten's treating doctors had not "diagnosed any of the syndromes that can sometimes be associated with diabetes (for example, chronic kidney disease . . . )." AR 41.

At step three, the ALJ stated that Ms. Penny-Batten did not have an impairment, or a combination of impairments, that met or medically equaled the severity of one of the listed impairments in the appendix. *See* AR 43.

At step four, the ALJ concluded that Ms. Penny-Batten had the residual functional capacity ("RFC") to perform light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b),

> except she is able to frequently lift and/or carry ten pounds, can occasionally lift and/or carry twenty pounds, can sit for up to six hours although she must be permitted to stand for five minutes after sitting two hours, can stand or walk a total of six hours, one hour at a time, in an eight-hour workday with normal breaks, should never climb ladders, ropes, or scaffolds, is able to frequently climb ramps or stairs, can occasionally stoop, kneel, crouch, or crawl, and can occasionally balance when on narrow, slippery, or erratically moving services.

AR 43. Based on this RFC, the ALJ found that Ms. Penny-Batten was capable of performing her past relevant work as a security guard as generally performed and as a ball sorter as actually performed. *See* AR 50. Accordingly, the ALJ held that Ms. Penny-Batten was not disabled and therefore not entitled to disability insurance benefits or SSI.

Thereafter, Ms. Penny-Batten asked the Appeals Council to review the ALJ's decision, submitting in support of her request additional evidence related to dizziness, diabetes, and kidney problems. The Appeals Council denied her request for review, stating, *inter alia*, that the bulk of

1  the new evidence did "not show a reasonable probability that it would change the outcome of the
2  decision." AR 2 (Appeals Council decision).

## II.     DISCUSSION

A.   Legal Standard

After a final decision on a claim for benefits by the Commissioner, the claimant may seek judicial review of that decision by a district court. *See* 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if the ALJ has committed legal error or if the ALJ's findings are not supported by substantial evidence. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."). Substantial evidence is relevant evidence – "more than a scintilla, but less than a preponderance" – that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). A court evaluates "the record as a whole, . . . weighing both the evidence that supports and detracts from the ALJ's conclusion" to determine if substantial evidence supports a finding. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence supports "more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

In the instant case, Ms. Penny-Batten makes several arguments – *e.g.*, that the ALJ erred at step two in failing to find that she suffered from another severe impairment, *i.e.*, kidney disease; that the ALJ's assessment of her credibility was flawed because it was not supported by clear and convincing evidence; and that the ALJ erred at step four in failing to credit the opinions of her treating physician, Dr. Blackwell, as well as those of an examining physician, Dr. Cohen. For purposes of the pending summary judgment motions, the Court does not address these arguments per se as presented in Ms. Penny-Batten's papers but rather takes a different approach, one focused on Ms. Penny-Batten's condition during two different periods: (1) on or before December 31, 2008, and (2) between January 1, 2009, and November 15, 2017.

B.   Ms. Penny-Batten's Condition on or Before December 31, 2008

Ms. Penny-Batten's condition on or before December 31, 2008, is important because, as

the ALJ noted (and no party disputes), she had acquired sufficient quarters of coverage to remain insured through that date only. That is, Ms. Penny-Batten had to "establish disability on or before [December 31, 2008,] in order to be entitled to . . . disability insurance benefits" (but not SSI). AR 38 (ALJ decision).

Although Ms. Penny-Batten appears to have been diagnosed with diabetes by 2008, *see, e.g.*, AR 700 (medical record from treating physician Dr. Small, dated May 2004) (indicating that Ms. Penny-Batten "declined diabetes meds"), the record does not suggest that her diabetes materially impacted her ability to function at that point in time; rather, her primary complaint at that time concerned back pain. Indeed, it appears that Ms. Penny-Batten amended her alleged onset date from November 19, 2003, to January 11, 2008, because, on the latter date, one of her treating physicians, Dr. Blackwell, issued a work status report in which he indicated that she was "[u]nable to [r]eturn to [w]ork" because of, specifically, back problems. *See* AR 654 (work status report from Dr. Blackwell).

To the extent Ms. Penny-Batten claims that the ALJ erred by failing to find that she was disabled as of January 11, 2008, the Court does not agree. As an initial matter, the Court notes that Dr. Blackwell's opinion on January 11, 2008, that Ms. Penny-Batten was unable to work (permanently) as a result of her back issues is not entitled to any special consideration. That opinion is not a medical opinion. *See, e.g.*, 20 C.F.R. § 404.1527(d)(3) (stating that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner"); *id.* § 404.1527(d)(1) (noting that "[o]pinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case[,] i.e., that would direct the determination or decision of disability"; this includes "[o]pinions that you are disabled," and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Moreover, in and of itself, Dr. Blackwell's work status report finding Ms. Penny-Batten disabled was totally conclusory. In the work status report, Dr. Blackwell made no specific assessment of her limitations and ability to work.

Dr. Blackwell did issue a medical report on January 11, 2008 (to a claims examiner),

5

apparently in support of his work status report of the same date.[2] *See* AR 652-54 (medical report). In his medical report, Dr. Blackwell noted that he had treated Ms. Penny-Batten after an injury to her lower back from April 4, 2003, to July 26, 2005. *See* AR 652. Evidently, Dr. Blackwell did not examine Ms. Penny-Batten again until shortly before he prepared the medical report (*i.e.*, some two and a half years later). Dr. Blackwell noted that he was examining Ms. Penny-Batten because she was experiencing an increase in her lower back pain. He stated as follows:

**Physical Examination**

By clinical examination, I find that she has irritability to her lower back, showing a nearly full range of motion, but all associated with pain. Heel and toe lifts were performed satisfactorily. The sitting straight leg raise test is positive for lower back pain. The straight leg raise recumbent is to 45 degrees bilaterally. The patient has no motor or sensory deficits. She is tender in the region of the iliolumbar ligaments bilaterally.

**Impression**

Chronic musculoligamentous strain and sprain lumbosacral spine with acute exacerbation.

**Comments**

At this time, it appears that Ms. Batten is having a flare up of her chronic pain problem.

I prescribed Norco 10 mg and Benalg lotion to help gain control of her symptoms.

She may require a brief trial of physical therapy depending upon her response to the prescription medications.

She is due to return here in approximately two weeks . . . .

AR 653.

Dr. Blackwell's medical opinion above appears to be uncontroverted. While other doctors did provide medical opinions about Ms. Penny-Batten's condition – *e.g.*, examining physicians Dr.

---

[2] On an earlier date – December 5, 2003 – Dr. Blackwell issued a different medical report. In his report, he noted, *inter alia*, with respect to Ms. Penny-Batten's back pain that "she had slight diminished range of motion with poor mobility, evidence of a positive Waddell's sign on femoral stretch testing," and "negative" MRI results. AR 666 (medical report). At that time, Dr. Blackwell opined that Ms. Penny-Batten's limitations only precluded her from "heavy work." AR 668. There is no subsequent MRI or similar test result in the record which document any deterioration or worsening of her condition.

6

Pon and Dr. Cohen – their opinions were rendered in 2015 and 2016, and it is not clear that they were expressing any views about Ms. Penny-Batten's condition as far back in 2008. Where a treating physician's medical opinion is not contradicted, an ALJ may reject that opinion only upon "'clear and convincing reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Although this is a high standard, it does not present an issue in the instant case because the ALJ did not reject Dr. Blackwell's medical opinion here but rather simply found that it was not enough to support her claim that she was disabled.[3] This was not an unreasonable conclusion.

Per the medical report, Ms. Penny-Batten demonstrated a full range of motion in her lower back, albeit with pain. Dr. Blackwell characterized the increase in pain as a "flare up," which suggested that the increase in pain could subside, particularly as Ms. Penny-Batten reported to him that "[m]ost of the time . . . she is able to gain relief with pain medication." AR 653. In fact, Dr. Blackwell took a conservative approach to the treatment of the flare up, simply prescribing pain medication and identifying physical therapy as a possibility "depending upon her response to the prescription medications." AR 653. And although Dr. Blackwell stated that Ms. Penny-Batten was to return to his office in two weeks, there is nothing in the record to indicate that she did in fact return, from which one could infer that the pain had been resolved satisfactorily. Finally, it is worth noting that, other than Dr. Blackwell's January 11, 2018, medical report, there is nothing in the record that addresses her inability to work prior to December 31, 2008.

Accordingly, the Court finds no error with respect to the ALJ's finding that Ms. Penny-Batten was not disabled on or before December 31, 2008. That being the case, Ms. Penny-Batten is not entitled to disability insurance benefits, although she is not thereby precluded from seeking SSI for a later period.

C. <u>Ms. Penny-Batten's Condition Between January 1, 2009, and November 15, 2017</u>

As for Ms. Penny-Batten's condition after December 31, 2008 – more specifically, between January 1, 2009, and November 15, 2017 (the latter being the date of the ALJ's decision)

---

[3] Because the ALJ did not reject this medical opinion, there is no need here to evaluate whether the ALJ properly discounted Ms. Penny-Batten's credibility.

7

– the analysis is different.

As an initial matter, the Court notes that, within this period, there is a substantial amount of time for which there appears to be no medical records – roughly 2009 through 2014. Although the record does not precisely identify why, it appears that this is related to the fact that Ms. Penny-Batten was living in Trinidad during this time and did not return to the United States until 2014. *See* AR 45 (ALJ decision) (noting that, based on hearing testimony, Ms. Penny-Batten lived in Trinidad from July 2008 until July 2014); AR 377-78 (ALJ hearing transcript). Given the lack of any medical record or evidence of disability, the Court finds that the ALJ did not err in finding Ms. Penny-Batten not disabled for this period of time.

The Court, however, does find an error warranting a remand with respect to the period 2015 through November 15, 2017 – although that error is attributable to the Appeals Council rather than the ALJ. At the time that the ALJ rendered his decision, he was presented with evidence related to Ms. Penny-Batten's back pain as well as diabetes and vertigo/dizziness. With respect to diabetes and vertigo/dizziness, Ms. Penny-Batten asserted that they were related, in particular, that the vertigo/dizziness was a result of kidney problems related to her diabetes. *See* AR 404-05 (ALJ hearing transcript). The evidence concerning kidney problems, however, was limited. *See, e.g.*, AR 764 (medical record from September 2016) ("Mild fat stranding around the kidneys. This *could* represent acute pyelonepthritis *in appropriate clinical situation*.") (emphasis added). Based on the limited evidence, the ALJ found that the diabetes and vertigo/dizziness were not severe impairments. *See, e.g.*, AR 41 (ALJ decision) (noting that "treating physicians have not diagnosed any of the syndromes that can sometimes be associated with diabetes (for example, chronic kidney disease . . . )"; also noting that "[t]here is no evidence of . . . any other complication requiring hospitalization").

At the time Ms. Penny-Batten sought relief from the Appeals Council, however, she presented additional evidence related to her diabetes, vertigo/dizziness, and (especially notable) kidney problems. The bulk of the medical evidence was dated prior to the date of the ALJ's decision of November 15, 2017, decision, but there is no dispute that the ALJ was not given the vast majority of the documents, including, most significantly, evidence that Ms. Penny-Batten had

8

been hospitalized between October 1 and November 3, 2017, for septic shock due to a severe kidney infection requiring removal of her left kidney and, subsequently, temporary dialysis. *See* AR 113 (medical record, dated November 3, 2017) (describing "prolonged hospitalization for septic shock due to emphysematous pyelonephritis with e.coli bacteremia of kidney requiring a L nephrectomy on 10/7 now requiring temporary dialysis"); *see also* AR 112 (referring to a diagnosis of "[u]ncontrolled type 2 diabetes mellitus with stage 3 chronic kidney disease"). A medical record from December 2017 confirmed that Ms. Penny-Batten had been "started on temporary dialysis" and was "[s]till having dialysis 3x/week." AR 106 (medical record).

The Appeals Council acknowledged the new evidence presented by Ms. Penny-Batten but stated that the hospitalization evidence "does not show a reasonable probability that it would change the outcome of the decision." AR 2 (Appeals Council decision). The Appeals Council added that the December 2017 medical record "does not relate to the period at issue" and therefore "does not affect the decision about whether you were disabled beginning on or before November 15, 2017." AR 2.

In so holding, the Appeals Council erred. The hospitalization evidence was material, as it shed light on Ms. Penny-Batten's diabetes condition and related kidney issues. "Remand is necessary where the material evidence gives rise to a 'reasonable possibility' that the new evidence might change the outcome of the administrative hearing." *Borrelli v. Comm'r of Soc. Sec'y*, 570 Fed. Appx. 651, 652 (9th Cir. 2014); *cf. Taylor v. Comm'r*, 659 F.3d 1228, 1231 (9th Cir. 2011) (holding that court could consider evidence rejected by Appeals Council to determine whether the ALJ's decision was supported by substantial evidence and was free of legal error); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007) (noting that Appeals Council considered additional medical evidence and therefore, on appeal, both the ALJ's decision and the additional material submitted to the Appeals Council would be considered). Here, there is a "reasonable probability" that the hospitalization evidence might change the outcome of the administrative hearing. The evidence indicated that Ms. Penny-Batten was in fact having significant kidney problems that required hospitalization for approximately a month and the removal of her left kidney. Although not necessarily conclusive of disability, the evidence could

9

have had an impact on the ALJ's assessment that Ms. Penny-Batten's diabetes was not severe because she had not been diagnosed with a chronic kidney disease. *See* AR 41-42 (ALJ decision).

As for the December 2017 medical evidence, here, the Appeals Council erred as well. The Appeals Council discounted this evidence on the basis that it did "not relate to the period at issue" (*i.e.*, disability prior to November 15, 2017) but, the evidence was in fact related to Ms. Penny-Batten's hospitalization in October and November 2017, which was prior to the date of the ALJ's decision. *See Baccari v. Colvin*, No. EDCV 13-2393 RNB, 2014 U.S. Dist. LEXIS 159963, at *6 (C.D. Cal. Nov. 13, 2014) (noting that medical evidence "generated after the ALJ's decision" is still "chronologically relevant if it [is] related to a claimant's condition on or before the date of the ALJ's decision").

Implicitly recognizing the problematic nature of the Appeals Council's analysis (both with respect to the hospitalization evidence and the December 2017 medical evidence), the Commissioner argues that the Court should still deny Ms. Penny-Batten summary judgment because there is no indication that her kidney issues met the durational requirement for disability. *See* Opp'n at 10 (noting that "an impairment 'must have lasted or must be expected to last for a continuous period of at least 12 months' in order to be considered a severe impairment"). But the hospital's discharge summary stated that "[i]t is not likely her renal function will recover and will thus continue dialysis [3 times a week]." AR 113. At the very least, this evidence should have triggered a duty on the part of the Appeals Council to further develop the record. *Cf. Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Accordingly, the Court finds that the Appeals Council erred in denying Ms. Penny-Batten's request for review. The Court, however, finds that a remand is appropriate rather than an immediate award of benefits, precisely because a more developed record on Ms. Penny-Batten's kidney problems is warranted. Furthermore, it is not clear whether Ms. Penny-Batten's kidney problems were related to her refusal or reluctance to take diabetes medication and, if so, whether that affects her ability to claim disability.

On remand, the Social Security Administration should consider not only Ms. Penny-Batten's condition with respect to her kidney problems but also to her back pain. Although the Court finds no error in the ALJ's finding that Ms. Penny-Batten was not disabled through 2008 based on her back pain, that does not foreclose a disability finding during a later period in time when both her kidney problems and back pain are taken into account in combination.[4] *See* 20 C.F.R. § 404.1545(a)(2) (stating that "[w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity"); *id.* § 404.1523(c) (stating that, "[i]n determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

The Social Security Administration should also reassess Ms. Penny-Batten's credibility in light of the new evidence that Ms. Penny-Batten presented to the Appeals Council. The Court notes, however, that it does not make any ruling here that the ALJ erred in rejecting Ms. Penny-Batten's credibility based on the evidence that was presented before him. *See* AR 47 (ALJ decision) (discounting Ms. Penny-Batten's credibility regarding her back pain for a variety of reasons, including the fact that treatment was "conservative and routine at most, with extended periods for which there are no treatment records at all"); *cf. Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record"); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008) (stating that, "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant

---

[4] The Court does not address whether Ms. Penny-Batten was disabled in the 2015-2017 timeframe based solely on her back pain. However, it does note that, in August 2017, there was a medical record stating that recent x-rays of Ms. Penny-Batten were within normal limits. *See* AR 339 (medical record).

11

reversal").

## III. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part both parties' motions for summary judgment. The Court remands so that the Social Security Administration may consider whether Ms. Penny-Batten was disabled at any point from 2015 to November 15, 2017, based on, *e.g.*, her diabetes, related kidney issues, and/or back problems.

This order disposes of Docket Nos. 21 and 22.

**IT IS SO ORDERED**.

Dated: July 2, 2019

_____
EDWARD M. CHEN
United States District Judge